1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No.  2:14-CR-00021-KJM

12                   Plaintiff,

13          v.                                      ORDER

14    OMAR KABILJAGIC,

15                   Defendant.

16

17          Defendant, represented by counsel, moves for compassionate release and a

18   reduction of his sentence to time served under 18 U.S.C. § 3582(c).  Defendant makes this request

19   in light of the increased risks he says the coronavirus pandemic ("COVID-19") poses to him as

20   someone who is in custody in a halfway house, with his particular health issues.  Mot., ECF No.

21   135. The government opposes, Opp'n, ECF No. 142, and defendant has replied, Reply, ECF No.

22   143.  Having reviewed the parties' briefing, for the following reasons, the court DENIES

23   defendant's motion.

24   I.     BACKGROUND

25          It cannot reasonably be disputed that "[d]ue to the novel coronavirus pandemic, we

26   are in extraordinary times."  *United States v. Daniels*, No. 19-CR-00709-LHK (NC), 2020 WL

27   1815342, at *2 (N.D. Cal. Apr. 9, 2020) (internal quotation marks and citation omitted).  The

28   crisis triggered by the virus is global, leading to many emergency declarations, including a

presidentially declared national emergency. *See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020). Predictably, as the coronavirus has spread throughout the United States, it has reached jails and correctional facilities as well. *See, e.g., United States v. Daniels*, No. 19-CR-00709-LHK (NC), 2020 WL 1815342, at *3 (N.D. Cal. Apr. 9, 2020) (citing Timothy Williams, et al., *Jails are Petri Dishes*, N.Y. Times (Mar. 31, 2020)[1]).

Defendant Omar Kabiljagic is an inmate in BOP custody, following his conviction of two counts of making false, fictitious, and fraudulent claims in violation of 18 U.S.C. § 287 (filing fraudulent tax returns).[2] ECF Nos. 83, 85. On August 25, 2017, the previously assigned district judge sentenced Kabiljagic to 51 months imprisonment and 24 months supervised release. ECF No. 106. His projected release date is November 16, 2020, based on his application of good conduct time, and he has served approximately 40 months, or ninety-one percent of his fifty-one-month sentence. Opp'n, Ex. 1 ("Inmate Data"), ECF No. 142-1, at 2; Opp'n, ECF No. 142, at 2.

On April 10, 2020, defendant filed a pro se motion to reduce his sentence to time served; *see generally* Pro Se Mot., where at the time, the federal Bureau of Prisons (BOP) reported 388 federal inmates and 201 BOP staff diagnosed with the virus and 13 inmate deaths. *Id.*, (citing BOP, *COVID-19 Cases* (updated daily).[3] As of this writing, BOP reports 1,813 federal inmates and 733 BOP staff who have confirmed positive test results for COVID-19 and 124 inmate deaths nationwide. BOP, *COVID-19 Cases* (updated daily) (accessed October 2, 2020).

Responding to the risks in the federal prisons, Attorney General William Barr has issued two memoranda to the BOP Director, directing BOP to maximize the release of inmates to home confinement at institutions most affected by COVID-19, by making individualized

---

[1] https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

[2] The relevant statute is titled false, fictitious or fraudulent claims.

[3] As have other courts, this court takes judicial notice of the information presented by the BOP at https://www.bop.gov/coronavirus/ (accessed on April 13, 2020); *See Daniels*, 2020 WL 1815342, at *3.

1    determinations balancing inmates' vulnerability to infection and public safety. *See* Mem. from

2    U.S. Att'y Gen. William Barr to Director of Bureau of Prisons (April 3, 2020) (second

3    memorandum supplementing original after passage of the CARES Act)[4].

4              On April 13, 2020, the court appointed the Office of the Federal Defender to

5    represent defendant on his pending request.  Min. Order, ECF No. 130.  A day later, on April 14,

6    defense counsel filed a status report, ECF No. 132, notifying the court defendant had been

7    transferred from FCI Taft to FCI Mendota.  On June 19, 2020, defendant was transferred from

8    FCI Mendota to the GEO Reentry Inc. (RRC), a halfway house in Oakland, California.  Mot.,

9    ECF No. 135; Opp'n at 2.

10             On July 20, 2020, defendant through counsel, has renewed his motion for

11   compassionate release. *See generally* Mot.  Since June 19, 2020, defendant, who is 49 years old,

12   has been serving his sentence at a halfway house in Oakland, California, which houses 62 men.

13   Mot. at 2; *see* Opp'n, Ex. 1 ("Inmate Profile"), ECF No. 142-1, at 5.  Defendant explains he lives

14   in a "dorm-style room with five other men . . . the men do not wear masks in the dorm room[,]

15   there is no ability to socially distance in this home [and] a number of people in the house have

16   tested positive for COVID-19, some became so seriously ill that they were taken to the hospital."

17   *See* Mot. at 2:5–9.  Moreover, defendant argues his chronic hypertension, high cholesterol and

18   latent tuberculosis place him at heightened risk for severe illness from COVID-19. *Id.* at 7;

19   Medical Records, Ex.1 ("BOP Health Services Record"), ECF No. 139-1, at 2 (under seal) (BOP

20   medical chart noting defendant's health problems include hyperlipidemia and hypertension).[5]

21             The government opposed, *see* Opp'n, and defendant replied.  Reply, ECF No. 143.

22   The court hereby SUBMITS the matter without a hearing and resolves it here.

23

24             [4] Available at https://www.justice.gov/file/1266661/download.

25
     [5] Defendant submitted this record *in camera* and requested the court seal it due to the
26   sensitivity of defendant's medical records. The court granted the request to seal, ECF No. 138,
     and considers the document here. The medical records document defendant's medical encounters
27   at BOP Health Services on April 10, 2019 and June 19, 2020. BOP Health Services Record at 1–
28   3.

                                                      3

1    II.    LEGAL STANDARD

2          Defendant brings his motion for release under 18 U.S.C. § 3582(c)(1)(A)(i), which

3    allows a court to modify a sentence under certain circumstances.  Under the current version of the

4    statute, a motion for modification may be made by either the Director of the Bureau of Prisons or

5    by a defendant "after the defendant has fully exhausted all administrative rights to appeal[.]"

6    18 U.S.C. § 3582(c)(1)(A).

7          In order to modify a sentence and grant compassionate release following

8    exhaustion, as relevant here, a district court engages in a two-step process.  First, it must consider

9    the familiar 18 U.S.C. § 3553(a) factors applicable at the original sentencing, to the extent they

10   remain applicable at the time a motion is brought.  18 U.S.C. § 3582(c)(1)(A).  Second, the court

11   must find that "extraordinary and compelling reasons warrant such a reduction."  *Id.*  18 U.S.C.

12   § 3582(c)(1)(A)(i).  An alternative provision provides for consideration of a motion by a

13   defendant who is 70 years or older, and so is not applicable here.  18 U.S.C. § 3582(c)(1)(A)(ii).

14         The Sentencing Commission has addressed what qualifies as "extraordinary and

15   compelling reasons" to release a defendant from BOP custody in a policy statement.  *See*

16   U.S.S.G. § 1B1.13.  Since passage of the First Step Act, many courts have held that the policy-

17   statement provision, previously applicable to § 3582, "no longer fits with the statute," *United*

18   *States v. Cantu,* No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019), and

19   therefore "federal judges are no longer constrained by the BOP Director's determination of what

20   constitutes extraordinary and compelling reasons for a sentence reduction," *United States v.*

21   *Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020).  At the same

22   time, a court can give the policy statement some weight in determining a request for

23   compassionate release.  *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3

24   (D. Me. July 11, 2019) (existing policy statement provides "helpful guidance," but "is not

25   ultimately conclusive given the statutory change").  In resolving the instant motion, this court, as

26   it has in other similar cases, considers the Sentencing Commission's policy statement as

27   guidance, without determining whether it is binding in this context. *See United States v. Head*,

28   No. 2:08-CR-00093-KJM-2, 2020 WL 3180149, at *1 (E.D. Cal. June 15, 2020) (collecting cases

4

finding U.S.S.G. § 1B1.13 no longer limiting but considering the policy statement as guidance).

The court notes that, in addition to listing possible "extraordinary and compelling reasons," §

1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of

any other person or to the community." *United States v. Numann*, No. 3:16-CR-00025-TMB,

2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

III.     DISCUSSION

     A. Exhaustion

     As a threshold matter, defendant argues he was not required by 18 U.S.C.

§ 3582(c)(1)(A) to file a third administrative request for compassionate release after being

transferred to a halfway house in Oakland, California, because twice before he had already made

requests for a reduction in sentence to the BOP Warden.  Mot. at 1–3.  The government counters

that defendant has not exhausted administrative remedies.  Opp'n at 6–7.  It contends, despite his

transfer to the RRC, defendant remains in custody of the BOP, and accordingly must submit a

request for compassionate release to the Sacramento Residential Reentry Manager (RRM) for the

BOP's Western Sector, Ms. Christine Hilliard.  *Id.*  Ms. Hilliard stands in the stead of the Warden

for inmates designated to RRCs within the Western Sector, and retains authority over all case

management decisions, including requests for sentence reductions. *Id.* Generally, exhaustion

requires defendant seek compassionate release with the BOP and exhaust all appeals or show that

at least 30 days have lapsed and BOP has failed to respond to defendant's request, whichever is

earlier.[6]  *See United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2

(D. Idaho Jan. 8, 2020).  Here, defendant originally filed his request for a transfer to home

confinement and a reduction in his sentence on April 4, 2020, using a form evidently available to

him at FCI Taft; he directed his request to "Steven Merlak, Warden."  Pro Se Mot. at 29; Pro Se

/////

/////

_____

    [6] 18 U.S.C. § 3582(c)(1)(A) states defendant may make a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Mot., Ex. 1 ("Inmate Request to Staff"), ECF No. 128, at 1.[7]  In his request, defendant specifically raised concerns about the planned transfer of inmates to other facilities.  *See* Inmate Request to Staff at 1 ("I am at an even greater risk than the 'average' inmate at other BOP facilities . . . due to . . . my immenient [sic] pending transfer . . . to another facility[] . . . and exposure via buses, planes, holding cells . . . .").  On April 6, 2020, defendant received a copy of a blanket memo response addressed to "Camp Inmate Population" from "D. Patrick, Executive Assistant/Grievance Coordinator," saying that "individual responses will not be provided, nor will any future requests regarding this same matter be addressed"; rather "due to the current decision by the Bureau of Prisons to close the facility and the subsequent transfer of all inmates, each of you will have to make this request at your new facility."  Pro Se Mot. at 7 (citing Pro Se Mot., Ex. 5 ("Taft April 6, 2020 Mem."), ECF No. 128, at 45).  The response also notes that FCI Taft staff "has not been provided guidance by [] BOP regarding the Attorney General's Memorandums involving any revised procedures for an inmate's placement on Home Confinement.  Therefore, current procedures will remain in place."  Taft April 6, 2020 Mem.

Evidently, defendant was not able to appeal the denial from the request made at FCI Taft, because BOP's declined to consider the request and all others like it.[8]  *Id.*  On April 14, 2020, defendant was transferred from FCI Taft to FCI Mendota where he filed a second request for compassionate release and received no response before being transferred on June 19, 2020, to the halfway house in Oakland, California.  Reply at 2.

/////

---

[7] The government notes that "[t]his document is not raised by defendant in the instant Motion, nor does the BOP have record of this request," Opp'n at 6 n.3, but fairly construed defendant's Inmate Request to Staff filed with the Warden at FCI Taft is such a request.  *See* Inmate Request to Staff at 29.  On the first page of defendant's request he cites § 3582(c)(1)(A).  *Id.*

[8] *See United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020) (finding defendant moving for compassionate release during COVID-19 pandemic "effectively exhausted her administrative remedies by petitioning the BOP, giving them notice, and being told she does not have any other administrative path or remedies she can pursue," because "[a]ny further attempt to exhaust administrative remedies at this time would be futile").

1    Nonetheless, the government argues exhaustion has not been satisfied here,

2  because defendant did not re-file his request with the Sacramento-based RRM.[9]  Defendant

3  counters the BOP Program Statement 5050.050 that governs administrative request for a

4  reduction in sentence for federal prisoners, *see* Reply, Ex. 1 ("BOP Program Statement"), ECF

5  No. 143-1, does not include a provision that directs a prisoner who is transferred to make a

6  request for compassionate release to a RRM.  Reply at 2.  This court, in *United States v. Dailey*,

7  analyzed a similar situation where a defendant filed his motion for compassionate release while

8  incarcerated at a different facility and had no "apparent reason to know he would be transferred."

9  *United States v. Dailey*, No. 2:13-CR-00118 KJM, 2020 WL 4504449, at *2 (E.D. Cal. Aug. 5,

10  2020).  There, this court found "defendant's request made to the Warden of FCI Herlong was

11  sufficient to trigger the thirty-day exhaustion period . . . ," and defendant's motion "[was]

12  properly before the court."  *Id*.  Accordingly, on this record, the court finds defendant has

13  exhausted administrative remedies, and his motion is properly before the court.

14    B.   "Extraordinary and Compelling Reasons"

15    Because the court finds defendant's motion is properly before the court, it

16  considers his argument that the COVID-19 pandemic constitutes a compelling reason for his

17  release.  *See* Mot. at 2–4.  Specifically, he contends "his chonic [sic] underlying health condition

18  leave him at an increased risk for severe illness from COVID-19" because "both hypertension and

19  latent tuberculosis (TB) may create increased risks for severe illness or death from COVID-19."

20  Reply at 5; BOP Health Services Records (under seal), ECF No. 139-1, at 2 (BOP medical chart

21  noting defendant's health problems include hyperlipidemia and hypertension); *id*., Ex. 2, ECF No.

22  139-2, at 2 (BOP medical records describe defendant's high blood pressure, high cholesterol and

23  latent TB as "chronic problems" and "significant medical disorder").  Additionally, in his April 4

24  request to BOP, defendant himself says he "has a history of hypertension," suggesting this is a

25  condition he had in the past.  Inmate Request to Staff at 2.  However, the government challenges

26

27    [9] Defense counsel notes on August 13, 2020, a copy of defendant's compassionate release
request with supporting documents was mailed to the RRM, Ms. Christine Hilliard.  *See* Reply at
28  2 n.2.

defendant's claim that his conditions present the type of serious physical or medical conditions that substantially diminish his ability to provide self-care within his halfway house. Opp'n at 12.

In particular, the Centers for Disease Control and Prevention (CDC) has concluded that among "the most common" underlying conditions for hospitalization with COVID-19 is "hypertension (49.7%)."[10]  Moreover, on April 17, 2020, the CDC confirmed, "[m]ore than half (805; 54.4%) of hospitalizations occurred among men" and "among the 1,482 laboratory-confirmed COVID-19–associated hospitalizations reported through COVID-NET, . . . 366 (24.7%) were aged 18–49 years." *Id.*

The CDC's Guidance for Correctional & Detention Facilities notes that the circumstances in these facilities present "unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors," with the observation that "[c]onsiderations when assessing close contact include the duration of exposure (e.g., longer exposure time likely increases exposure risk) and the clinical symptoms of the person with COVID-19 (e.g., coughing likely increases exposure risk, as does exposure to a severely ill patient)."[11]  Moreover, "[c]ontact tracing may be more feasible and effective in settings where incarcerated/detained individuals have limited contact with others (e.g., celled housing units), compared to settings where close contact is frequent and relatively uncontrolled (e.g., open dormitory housing units)." Reply at 7 (quoting Opp'n Ex. 2 ("CDC Interim Guidance"), ECF No. 142-3, at 27).  Some courts have concluded, not unreasonably, that "[t]he danger of COVID-19 to high-risk individuals who are imprisoned is likely much greater than to those who are free to take

---

[10] CDC, *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease*, https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm (last updated April 17, 2020) (last accessed August 25, 2020).  The CDC lists the following underlying medical conditions as increased risk factors: the most common being hypertension (49.7%), next obesity (48.3%), chronic lung disease (34.6%), diabetes mellitus (28.3%), and cardiovascular disease (27.8%).

[11] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed October 2, 2020).

their own protective measures."  *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote omitted).

The government argues defendant's claims regarding the prevalence of COVID-19 at the RRC and lack of health and safety measures taken in response to the pandemic are false. Opp'n at 12 (citing Opp'n, Ex. 2 ("Lange Decl.") ¶ 24, ECF No. 142-3 ("to date only one resident at the facility has tested positive for COVID-19 and . . . made a full recovery.")).  In his reply, defendant acknowledges neither defense counsel nor defendant has access to resident's medical information and defendant's allegations are based on personal observations of other residents in the Oakland halfway house being medically evacuated due to COVID-19 complications.  Reply at 7.  While the government represents the RRC and its operating group have coordinated efforts with the BOP to limit inmates' exposure to COVID-19 through social distancing; *see* Lange Decl. ¶¶ 12, 18, the government does not respond to defendant's arguments that the RRC does not provide widespread testing or that masks are not worn in the dorm room.  *See* Mot. at 2. Additionally, Mr. Lange's declaration is not inconsistent with defendant's statements that he was not permitted to visit the doctor, that all cleaning in the house is done between 6 a.m. and 9 a.m. by the residents, and common areas are not continually disinfected throughout the day.  *See* Mot. at 8 (citations omitted); *see generally* Lange Decl.

Assessing the totality of the record before it, the court concludes extraordinary and compelling reasons exist for defendant's compassionate release.  He is 49 years of age, male, with a history of hypertension, high cholesterol and latent TB, which corresponds with the CDC's identification of persons at higher risk for COVID-19 hospitalization.  Thus, on this record, the court finds that "unprecedented, extremely serious health risk posed by continued detention, exacerbated by [defendant's] health conditions, constitutes a compelling reason" for a reduction in defendant's sentence to time served.  *Cf. Daniels*, 2020 WL 1815342, at *4; *cf. also United States v. Gonzalez*, 2020 WL 1536155, at *2 (finding compassionate release warranted under the "other reasons" category of USSG § 1B1.13, cmt. n.1(D)).

/////

/////

1        C. Sentencing Commission Policy Statements

2              The Sentencing Guidelines instruct that "the court should consider the sentencing

3 factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and

4 that the court should not grant a sentence reduction if the defendant poses a risk of danger to the

5 community, as defined in the Bail Reform Act." *Esparza*, 2020 WL 1536155, at *3 (citing

6 U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A)(i).  While this Guidelines provision is

7 advisory at best, if still applicable after passage of the First Step Act, the court nevertheless

8 considers dangerousness.

9              Nothing in the record rebuts defendant's representation that he does not present a

10 risk of danger to the community as articulated in 18 U.S.C. § 3142(g).  On June 19, 2010,

11 defendant was transferred to the RRC because BOP found he was at a "minimum risk recidivism

12 level," *see* Opp'n, Ex. 1 ("Inmate Profile"), ECF No. 142-1 at 5 (quoting docket entry dated

13 November 24, 2019).  The court also gives some weight to defendant's representation that he is

14 permitted to leave the halfway house during the day, wearing an ankle monitor to work as a

15 paralegal for attorney Timothy McCandless.  Reply at 10.  Moreover, the underlying criminal

16 conduct was not a crime of violence.  Defendant has no history of violence and has conducted

17 himself well while in prison.[12]

18              The court also, however, considers defendant's release plan, which includes self-

19 quarantine at a friend's residence in Antioch, California, or in an apartment that his employer,

20 Mr. McCandless, will provide. Pro Se Mot. at 30; Mot. at 14.  The court has conferred with the

21 Probation Office that will be responsible for supervising Mr. Kabiljagic in the Northern District

22 of California, which has determined Mr. Kabiljagic's release plan to reside in Antioch, California,

23 is not appropriate given the presence of other residents in the home unwilling to comply with

24

25        [12] The BOP's Inmate Profile-Progress Report dated July 22, 2020, confirms on September 20, 2017, defendant received "security classification minimum" and on October 24,

26 2017, defendant "completed GED or HS diploma."  Additionally, on October 24, 2019, defendant was "cleared for food service."  *See generally* Inmate Profile; Mot., Ex. 4 ("Associate Arts

27 Degrees"), ECF No. 135-2, at 2–4 (showing defendant's Associates in Science and Associates in Arts degrees with high honors from Taft College); *id.*, Ex. 5 ("BOP Certificates"), ECF No. 135-

28 3, at 2–36.

Probation's conditions. Without more detail on the exact living arrangements available to defendant as may be provided by the attorney prepared to hire him upon release, the court is unable to determine whether that is a viable option.[13]

Accordingly, upon evaluation of all the factors to be considered in imposing a sentence, 18 U.S.C. § 3553(a), and on balance, this court finds the combination of factors preclude granting Mr. Kabiljagic's motion at this time.

IV.    CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is DENIED, but without prejudice to his proposing an acceptable release plan.

This order resolves ECF No. 135.

IT IS SO ORDERED.

DATED:  October 5, 2020.

CHIEF UNITED STATES DISTRICT JUDGE

---

[13] Defendant's moving papers indicate the attorney who will hire him can provide an apartment in Bakersfield, but Probation has advised the court the attorney currently has an office in Modesto, and any living arrangements are likely to be provided there.